```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
```

MARDEN D. PARU, On Behalf
of Himself and All Others
Similarly Situated,

        Plaintiff,

   - against -                    04 Civ. 6907 (JES)

MUTUAL OF AMERICA LIFE             **MEMORANDUM OPINION**
INSURANCE COMPANY,                   **AND ORDER**

        Defendant.
```
----------------------------------------X
```
**SPRIZZO, D.J.:**

    Plaintiff Marden D. Paru ("plaintiff") moves to remand the above-captioned action from the Southern District of New York to New York State Supreme Court, where it was originally filed. Defendant Mutual of America Life Insurance Company ("defendant" or "Mutual of America"), who removed the action to this Court, opposes plaintiff's Motion to Remand. For the reasons set forth below, plaintiff's Motion to Remand is granted.

## BACKGROUND

    On July 22, 2004, the original plaintiff in this action, Harriet P. Epstein, brought this action on behalf of herself and all others similarly situated in New York State Supreme Court, alleging a single state law claim of breach of fiduciary duty against Mutual of America. On August 25, 2004, defendant removed the action to the Southern District of New York, pursuant to 28 U.S.C. §§ 1441, 1446, and the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(c), 78bb(f)(2), on the grounds that plaintiff's claim was preempted by SLUSA. See Def.'s Not. Of Rem. at 1. On September 21, 2004, plaintiff filed a Motion to Remand the action to state court;

defendant opposed the motion on October 21, 2004; and on October 28, 2004 plaintiff filed a reply to defendant's opposition. On December 13, 2005, the Amended Complaint was filed and Marden Paru was substituted as the named plaintiff in place of Harriet Epstein. See Am. Compl. ¶ 1. Plaintiff subsequently, on December 27, 2005, filed a second Motion to Remand the action back to state court; defendant filed its Memorandum of Law in Opposition to this motion on January 20, 2006; and plaintiff filed its Reply on February 10, 2006.[1] The Court heard oral argument on plaintiff's Motion to Remand on March 21, 2006.

The Amended Complaint alleges that defendant breached its fiduciary duty to plaintiff and to the class by permitting market timing to occur within one of the investment alternatives available to holders of its variable annuity contracts. Am. Compl. ¶¶ 1, 2. Variable annuity contracts are investment vehicles, offered exclusively by insurance companies, whereby the investor makes premium payments into the annuity and allocates those payments amongst various investment options, or sub-accounts, within the contract. Id. ¶¶ 9-11. The Putative Class consists of purchasers of Mutual of America variable annuity contracts who chose, as an investment alternative within those contracts, the Scudder Variable Series I: International Portfolio (the "Fund") between January 1, 1995 and May 1, 2002, and allege losses resulting from market timing in the Fund which defendant

---

[1] All remaining references to plaintiff's and defendant's memoranda refer to the plaintiff's second Motion to Remand, defendant's Opposition to that Motion, and plaintiff's Reply to that Opposition.

allowed to occur. Id. ¶ 1.

Market timing involves improper short-term trading in and out of a mutual fund, benefitting the market timer but harming long-term investors in the fund. Id. ¶ 4; Def.'s Mem. at 2. Market timers profit by taking advantage of an inefficiency inherent in the way mutual funds are priced. A mutual fund's price, its Net Asset Value ("NAV"), is calculated by subtracting the fund's total liabilities from its total assets. Am. Compl. ¶ 14. The NAV of funds whose shares are traded on foreign exchanges is calculated at the end of each trading day in the United States, using the last trade price in the home market of each security in the fund. Because foreign markets close anywhere from five to fifteen hours before the close of trade in the United States, by the time the NAV is calculated, the last trade prices in the foreign markets no longer reflect all relevant information that has become known since the foreign markets closed, such that the NAV no longer reflects the fair market value of the securities. Id. ¶¶ 16, 18, 20, 22.

The market timer makes his profit by waiting for a favorable discrepancy to appear in the pricing of the fund and quickly purchasing into the fund, before the NAV is recalculated the next evening to incorporate the new information. Id. ¶¶ 20, 24, 29, 30. For example, if favorable information about a European stock in a fund traded on the NYSE is revealed late in the afternoon--after the close of trading in Europe, but before the NYSE closes--the fund's NAV does not reflect this good news yet because the NAV will have been calculated using the price of the stock at time trading ended in

Europe, before that information was revealed. The market timer is able to make a profit by purchasing into the fund at the "stale" NAV, which does not yet reflect this information and is therefore lower than the actual value of the fund, and later selling those shares at an NAV which reflects their true, higher, value. This practice ultimately lowers the NAV of the fund, harming long-term investors in the fund. See id. ¶¶ 15, 24, 31, 34.

Plaintiff's sole claim against defendant, for common law breach of fiduciary duty, alleges that Mutual of America breached its fiduciary obligation to the class by allowing market timing to occur in the Fund, whose shares are traded on foreign exchanges. Id. ¶¶ 2, 4, 19, 48. Plaintiff alleges Mutual of America should have taken measures, such as making appropriate adjustments to the closing price of foreign securities, a practice known as Fair Value Pricing, to correct the inherent inefficiency in the pricing of the Fund, and prevent or reduce the possibility of market timing activity. Id. ¶ 21. Mutual of America did not engage in Fair Value Pricing or take any other measures to prevent market timing, as a result of which market timing was permitted to occur within the Fund and long term investors were harmed. Id. ¶¶ 4, 21, 48.

**DISCUSSION**

A defendant may remove a case from state to federal court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The removing party bears the burden of establishing federal jurisdiction. See Caterpillar Inc. v. Williams, 482 U.S. 386, 391-92 (1987). Challenges to subject

matter jurisdiction may not be waived and may be raised sua sponte by the district court. See Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 605 (2d Cir. 1988). If, at any time before final judgment, it appears that the district court lacks subject matter jurisdiction over an action, the case must be remanded, even where removal was proper at the time it was made. See 28 U.S.C. § 1447(c); Villano v. Kohl's Dep't Stores, Inc., 362 F. Supp. 2d 418, 420 (S.D.N.Y. 2005).

Congress enacted SLUSA in 1998 in order to make federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities. See Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107 (2d Cir. 2001). Under SLUSA, a covered class action brought in state court, based upon the statutory or common law of any state, must be removed to federal court. See 15 U.S.C. § 78bb(f)(2). If a district court determines that the action is not a preempted class action, the district court lacks subject matter jurisdiction over the action and must remand it back to the originating state court. See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 125 (2d Cir. 2003). SLUSA's removal provision is triggered wherever the following four conditions are met: (1) the underlying suit is a "covered class action;" (2) the action is based on state or local law; (3) the action concerns a "covered security;" and (4) the plaintiff has alleged that the defendant misrepresented or omitted a material fact or employed a manipulative or deceptive device or contrivance in connection with the purchase or sale of a security. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 44-45 (2d Cir. 2005) vacated on other grounds, 126

5

S. Ct. 1503 (2006).

The parties to this action dispute only whether the fourth requirement for preemption is met. Pl.'s Mem. at 4; Def.'s Mem. at 9. Plaintiff argues that because the complaint states only a state law claim for breach of fiduciary duty and does not allege any untrue statements or omissions of material fact, it is not preempted by SLUSA and must therefore be remanded. Pl.'s Mem. at 1, 3. Mutual of America counters that despite plaintiff's "strategic attempts to plead artfully around the requirements of [SLUSA]," the substance of plaintiff's allegations are based on "explicit and implicit misrepresentations and omissions." Preemption is therefore mandated and the Motion to Remand must be denied.[2] Def.'s Mem. at 1, 3, 6.

Defendant urges, and recent caselaw indicates, that this Court must look beyond the face of the Complaint to the substance of plaintiff's allegations to determine whether SLUSA preemption applies. See Dabit, 395 F.3d at 44-45; Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 265 (S.D.N.Y. 2004). While this Court is mindful that plaintiff may not escape SLUSA preemption through artful pleading meant to disguise allegations of misstatements or omissions, it is similarly mindful that defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA. See MDCM Holdings, Inc. V. Credit Suisse First Boston, Corp., 216 F. Supp. 2d 251, 257 n.12 (S.D.N.Y.

---

[2] The parties also dispute whether, in the event plaintiff has alleged that defendant made misrepresentations or omissions, they were made "in connection with" the purchase or sale of securities. Pl.'s Mem. at 12-13; Def.'s Mem. at 18-22. Given the independent rationale for this Court's ruling, it need not reach the "in connection with" issue.

6

2002).

Defendant, acknowledging that plaintiff makes no explicit allegation of a misstatement or omission, points to three "implicit" allegations of misrepresentations in plaintiff's Complaint triggering SLUSA preemption. Def.'s Mem. at 2, 12-15. The first is plaintiff's allegation that defendant held itself out as an expert in long-term investments. Am. Compl. ¶ 46. Defendant argues that this amounts to an allegation that defendant affirmatively represented it would protect potential investors from the "pernicious effects of market timing," a representation which turned out to be false and thus, defendant reasons, constituted a misrepresentation. See Def.'s Mem. at 12-13.

This Court cannot agree with defendant. Nowhere does plaintiff allege that defendant represented it would in fact prevent market timing nor can such an allegation be read into plaintiff's assertion that defendant held itself out as an expert in long-term investments. Many breach of fiduciary duty claims rest on allegations that because a defendant possessed expertise in his field, he was obligated to fulfill certain duties, which he failed ultimately to do. According to defendant's logic, a disguised allegation of non-disclosure hides behind each of these claims, and if such a claim is connected to the purchase or sale of a security, it is necessarily preempted by SLUSA. This result is at odds with the well-established principle that federal preemption provisions must be read with the presumption that Congress did not intend to displace state law entirely, see Greater N.Y. Metro. Food Council, Inc. v. Giuliani, 195 F.3d 100, 105 (2d Cir.

7

1999), as well as with the Second Circuit's determination that while SLUSA preemption may be broad, it is not unlimited, see Spielman, 332 F.3d at 123.

Defendant next asserts that plaintiff's claim is necessarily based on defendant's non-disclosure of market timing rather than, as plaintiff insists, defendant's failure to prevent market timing. Def.'s Mem. at 14. Because market timing itself is not illegal, defendant contends, plaintiff's complaint seeking damages must result from the non-disclosure of market timing activity. However, since market timing activity in a mutual fund is nonetheless detrimental to the long-term performance of a fund, whether legal or not, plaintiff's damages claims does not necessarily result from the non-disclosure of that activity. It follows that non-disclosure of market timing activity is not a necessary allegation implicit in the Complaint.

Finally, defendant contends that "plaintiff's claim is premised on allegations that the Fund's pricing misrepresented the true value of the Fund" because the Fund's NAV was calculated using "stale" prices, and therefore constituted a misstatement each time it was issued. Def.'s Mem. at 15. This argument lacks merit. The Fund's NAV is an accurate reflection of the value of the Fund, as calculated using the last trade prices in the home markets of each security in the fund, and plaintiffs do not allege otherwise. That an inherent inefficiency arises from this method of pricing a mutual fund, which market timers take advantage of to the detriment of other investors in the Fund, does not amount to an allegation that the NAV is itself a misleading figure. Plaintiff's core allegation is that there were

8

various steps Mutual of America could have, and should have, taken to prevent market timers from taking advantage of inherent inefficiencies in the pricing of the Fund, but not that there was anything inaccurate or misleading about information defendant represented about the Fund to the public.

In support of its arguments, defendant relies on a number of cases from this Circuit in which courts have found state law claims to be preempted by SLUSA despite plaintiffs' insistence that the claims do not rely on the type of conduct that triggers SLUSA. In <u>In re NYSE Specialists Sec. Litig.</u>, 405 F. Supp 2d 281, 307 (S.D.N.Y. 2005), the court found plaintiffs' state law claims for breach of fiduciary duty preempted by SLUSA, although "plaintiffs have disclaimed any incorporation of fraud allegations," because the claims nonetheless stemmed from alleged manipulative conduct and material omissions. Similarly, in <u>Korsinsky v. Salomon Smith Barney Inc.</u>, No. 01-6085, 2002 U.S. Dist. LEXIS 259, at *11-12 (S.D.N.Y. Jan. 9, 2002), the Court found that although "the complaint clearly states that 'this is not an action for fraud,'" it in fact contained "several instances of alleged misrepresentations" made by the defendants. Finally, the Court in <u>Araujo v. John Hancock Life Ins. Co.</u>, 206 F. Supp. 2d 377, 384 (E.D.N.Y. 2002), found plaintiff's state law claims for breach of contract and unjust enrichment preempted by SLUSA because the complained of conduct consisted of "an alleged misrepresentation of a material fact." In each of these cases, the court found SLUSA preemption of the state law claims because, despite plaintiff's insistence otherwise, the complaint did allege either material

9

misstatements or omissions of material fact.

Having carefully examined this plaintiff's Complaint, this Court finds that it does not contain a single allegation of a misrepresentation or omission of material fact made by defendant which could trigger SLUSA preemption. Plaintiff in this case has alleged that defendant had a fiduciary obligation to take certain measures to protect the long term viability of plaintiff's investments, defendant failed to do so, and such failure resulted in plaintiff being harmed. Am. Compl. ¶ 47. Even looking beyond the face of the Complaint to the substance of plaintiff's allegations, it is clear that plaintiff's claim is not based, either explicitly or implicitly, on any misstatements or omissions. Therefore, plaintiff's state law breach of fiduciary duty claim is not preempted by SLUSA.

**CONCLUSION**

For the reasons stated above, plaintiff's Motion to Remand shall be and hereby is granted.

**It is SO ORDERED.**

Dated: New York, New York
May 10, 2006

_____
John E. Sprizzo
United States District Judge

**APPEARANCES**

BEATIE AND OSBORN LLP
Attorneys for Plaintiff
521 Fifth Avenue, 34th Floor
New York, NY 10175

    CHRISTOPHER J. MARINO, ESQ.
    DANIEL A. OSBORN, ESQ.

    Of Counsel


ALLEGAERT BERGER & VOGER, LLP
Attorneys for Plaintiff
111 Broadway, 18th Floor
New York, NY 10006

    CORNELIUS P. MCARTHY, ESQ.
    LOUIS A. CRACO, JR., ESQ.
    ROBERT F. FINKLESTEIN, ESQ.

    Of Counsel


PROSKAUER ROSE LLP
Attorneys for Defendant
1585 Broadway
New York, NY 10036

    RICHARD L. SPINOGATTI, ESQ.
    KAREN D. COOMBS, ESQ.

    Of Counsel